## WILLIAM HAUSKINS

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS

82   193
134  244
34a  449

82   193
140  538

82   193
47a  512

1. BASTARDY—*objections to insufficiency of proof on formal questions, must be made in lower court.* Where a complaint is made in a county in this State, charging that a person of such county is the father of a bastard child, and the return on the warrant shows that the defendant was found in that county, and the proof on the questions as to when the child was begotten or born, or where the defendant was found, is not fully called out before the jury, and no question is raised in the circuit court as to the sufficiency of the proof on these points, the objection will be too late when raised for the first time in the Supreme Court.

13—82D ILL.

2. SAME—*appeal lies to circuit court—trial de novo.* The prosecutrix in a bastardy case can take an appeal from an order of the county court dismissing the proceedings, to the circuit court, and upon such appeal, the case will be tried *de novo* in the circuit court.

3. SAME—*proceedings do not abate on death of child.* The proceedings in a bastardy case are not abated by the death of the child, but the court should, where the evidence shows that the child was born alive, and was living when the proceeding was instituted, and died before the trial of the cause, make an order, in case the defendant is found guilty, for the payment by him of so much of the amount fixed by statute as shall have accrued between the birth and death of the child.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

. Messrs. METCALF & BRADSHAW, for the appellant.

Messrs. G. B. & F. W. BURNETT, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment rendered in the circuit court of Madison county, in a proceeding originally instituted before a justice of the peace, against appellant, under the Bastardy Act of the State.

It is first urged that the evidence fails to show that the child was born or begotten in the State of Illinois.

The first section of the Bastardy Act authorizes the prosecution to be commenced in the county where the woman may be pregnant or delivered, or where the person accused may be found. Revised Laws of 1874, p. 183.

The complaint was made before a justice of Madison county, in which it is charged that appellant, of said county, is the father of the child. The return upon the warrant shows that appellant was found in the county.

These facts are sufficient to give the court jurisdiction, and while the proof upon the formal question where the child was begotten or born, or where appellant was found, was not fully called out before the jury, yet, in the absence of any question being raised in the circuit court upon the sufficiency of the proof upon this point, we must hold that the objection, for the

first time raised in this court, comes too late. *Cook* v. *The People*, 51 Ill. 144.

The county court, before whom the appellant had been recognized to appear by the justice of the peace, dismissed the proceeding, from which judgment an appeal was taken to the circuit court by the prosecuting witness.

It is said no appeal could be taken from this order of the county court. The reason for this, however, is not apparent. The judgment of the county court was final. It terminated the litigation between the parties, and we perceive no greater reason for holding that an appeal would not lie from a judgment of this character, than from a final judgment in any other case. But it is contended it was the duty of the circuit court to either affirm the decision of the county court, or reverse and remand.

This question, however, was settled in *Holcomb* v. *The People*, 79 Ill. 409, where it was expressly held that, in a case of this character, an appeal could be taken to the circuit court, and a trial *de novo* be there had.

As the decision cited is conclusive of the question presented, further discussion of the point is not deemed necessary or important.

The main question, however, relied upon by appellant to reverse the judgment, is, that the death of the bastard child before verdict, abated the prosecution.

It appears, from the record, that the child was born on the 20th day of February, 1874, and died January 9th, 1876. The suit was commenced September 11th, 1875, but the trial and rendition of judgment occurred at the March term, 1876.

Upon the trial of the issue, the jury returned a verdict that appellant was the father of the bastard child, upon which the court entered an order requiring him to pay $100 for the first year after the birth of the child, and $40 for the second year; also, that appellant enter into bond, with security, for the payment of the money, and upon the payment of the sum of $140, and costs of prosecution, the defendant be discharged from further liability.

The 8th section of chapter 17, Revision of 1874, provides that, where the issue shall be found by the jury, against the defendant, he shall be required, by the judgment of the court, to pay $100 for the first year after the birth of the child, and $50 yearly for nine years succeeding said first year, and secure the payment of the money by bond, with security.

This section of the act makes no provision for an abatement of the action, for any cause, but it is claimed section 14 does. That section declares: " If the child should never be born alive, or, being born alive, should die at any time, and the fact shall be suggested upon the record of the said court, then the bond aforesaid shall from thenceforth be void."

It is clear that, if a prosecution was commenced before birth, and the child should not be born alive, the action would abate, and no judgment could be rendered against the defendant, except it might be for costs; but such is not this case.

That portion of the section which relates to a case where a child should be born alive, and subsequently die, does not profess to regulate or make any provision in regard to the money which has accrued between the birth and death of the child.

The bond referred to in the section evidently means the bond required to be given under section 8, and the clause that it " shall from thenceforth be void," no doubt, was intended to relate solely to the payment of such sum of money as would become due, under the order of the court, after the death of the child.

If we are correct in this, then the section does not embrace a case like the one under consideration, nor have we found any section of the act which, by a fair or reasonable construction, will prevent a recovery in a case like this.

It has been urged on behalf of appellant that, after the death of the child, the State no longer had an interest in the prosecution of the action. This may be true, and yet not affect the principle involved.

It has been well settled in this State that an action of this character is of a civil and not of a criminal nature, and the mother of the child has an interest therein, as well as the

people. *Mann* v. *The People,* 35 Ill. 467; *Pease* v. *Hubbard,* 37 ib. 257.

In the case last cited, which was an action by a mother of a bastard child, against an officer, for permitting a defendant, who had been arrested on a bastardy warrant, to escape, it was said: ."Although it is a proceeding in the name of the people, yet the object is not the imposition of a penalty for an immoral act, but merely to compel the putative father to provide for the support of his offspring. In the event of his failure to perform this duty, it devolves upon the mother, and in case of her inability, the child becomes a public charge as a pauper. The plaintiff was clearly injured by the negligence of the defendant, because she is left liable to a burden from which it was the duty of the escaped prisoner to relieve her."

The principle announced applies with peculiar force here. The foundation of the action is not to punish a defendant for an immoral or unlawful act, but to compel a father to contribute to the support of his offspring.

During the two years the child was living, its care, custody and maintenance devolved upon the mother. Her action was pending to compel the father to perform a duty the statute had imposed upon him. Had the child survived, it is not pretended but the money the court required the defendant to pay would have gone to the mother to reimburse her for advances made during these two years she kept the child. In what manner the death of the child could change rights that had accrued and become fixed, it is difficult to perceive.

The statute required the defendant to pay a certain amount, for a certain number of years, for the purpose of supporting the child. The fact that the money had not been collected for the time the child had lived, did not, upon the death of the child, abate the action, or in any manner release the defendant from his liability for the support during the life of the child. This was the view taken of the case by the circuit court, and it was correct.

The judgment will be affirmed.

*Judgment affirmed.*